IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT NOVEMBER TERM, 1834.

PETER D. VROOM, Ordinary, v. THE EXECUTORS OF ALLEN SMITH, deceased.

An administration bond, the condition of which, required the administrator to exhibit an inventory "into the surrogate's office of the county," instead of "into the registry of the Prerogative Court in the Secretary's office of this state," according to the 11th section of the act of 1795, *Rev. Laws*, 176-7, is not void. The variance is not fatal. A bond may be good in part and bad in part, and the court will support the good part, and reject the bad part, where the good can be separated from the bad. That part of the act of 1795, which requires wills and inventories to be exhibited into the prerogative office, is repealed by the act of 1820, *Rev. Laws*, 776, *sec.* 22, and the condition of the above bond is in conformity with the new act.

This was an action brought on the following bond:

"Know all men by these presents, that we, Joseph Wright, Edmund W. Wright, and Allen Smith, of the county of Salem, are held and firmly bound unto His Excellency, Isaac H. Williamson, Ordinary or Surrogate General of the said state, in the sum of three thousand dollars, lawful money of said state, to be paid to the said Isaac H. Williamson, his successors or

assigns: to which payment, well and truly to be made, we band ourselves, our heirs, executors, and administrators, jointly and severally, firmly by these presents. Sealed with our seals, and dated the thirteenth day of October, in the year of our Lord, one thousand eight hundred and twenty-one.

The condition of this obligation is such, that if the above bounden Joseph Wright, administrator of all and singular, the goods, chattels and credits, of Vining Hill, esq. late of the county of Salem, deceased, do make or cause to be made, a true and perfect inventory of all and singular, the goods, chattels, and credits of the said deceased, which have or shall come to the hands, possession, or knowledge of the said Joseph Wright, or into the hands or possession of any other person or persons, for the said Joseph Wright, and the same so made, do exhibit or cause to be exhibited *into the surrogate's office of the county of Salem*, at or before the expiration of six calendar months, from the date of the above written obligation, and the same goods, chattels, and credits, and all other goods, chattels, and credits of the said deceased, at the time of his death, which at any time after, shall come to the hands or possession of the said Joseph Wright, or into the hands of any other person or persons for the said Joseph Wright, do well and truly administer according to law: and further, do make or cause to be made, a just and true account of his administration, within twelve calendar months from the date of the above written obligation; and all the rest and residue of the said goods, chattels, and credits, which shall be found remaining upon the account of the said administration, the same being first examined and allowed of by the judges of the Orphans' Court of the county, or other competent authority, shall deliver and pay unto such person or persons, respectively, as is, are, or shall, by law, be entitled to receive the same: and if it shall hereafter appear, that any last will and testament was made by the said deceased, and the executor or executors therein named, or any other person or persons, do *exhibit the same in the said surrogate's office*, making request to have it allowed and approved; if the said Joseph Wright, being thereunto required, do render and deliver the said letters of administration, (approbation of such testament being first had and made) to the said surrogate, then the above obligation to

be void and of none effect, or else to remain in full force and virtue."

The defendant demurred, and the words in the condition of the bond, printed in italics, are the variances relied upon, as grounds of the demurrer. The case was submitted to the court on the written arguments of the counsel for the parties.

*Eakin*, in support of the demurrer.

*Macculloch* and *Jeffers*, contra.

HORNBLOWER, C. J. This is an action on an administration bond. Smith, the testator of the defendants, was one of the securities in the bond. The declaration is general, and does not set out the condition, nor assign any breaches. The defendants have craved oyer, set out the bond and condition at length, and put in a general demurrer to the declaration.

In support of the demurrer, the defendants rely on a variance between the condition of the bond, and the form prescribed by the act of Assembly, directing such bonds to be taken.

The eleventh section of the act of 1795, *Rev. Laws*, 176–7, makes it a part of the condition of the bond, that the administrator shall exhibit the inventory, " into the registry of the prerogative court, in the secretary's office of this state, within six callendar months," &c. and also provides, that if a will shall appear, and the executor therein named, shall exhibit the same " into the said prerogative court, making request," &c. then, &c. Whereas the condition of the bond in question, requires the administrator to exhibit the inventory, " into the surrogate's office of the county of Salem," and substitutes the words, "in the said surrogate's office," instead of the words, " into the said prerogative court," used in the second clause referred to ; and whether this variance in the form of the condition of the bond, is fatal or not, is the question raised upon this demurrer.

By the third section of the act of 1784, *Pat. Rev.* 60, the secretary of state, for the time being, is declared to be the register of the Prerogative Court ; and the 10th section of the act of 1795, *Pat. Rev.* 155 ; *Rev. Laws*, 176, directs the inventory to be deposited " in the registry of the Prerogative Court, there to remain affiled." The next section of the act

last mentioned, requires the surrogate to take a bond with security, with a condition "in form and manner" therein prescribed, and, with great propriety, makes it a part of the condition, that the inventory should be filed, or exhibited "into the registry of the Prerogative Court." Thus the law stood till the act of the 9th of November, 1803, *Bloomfield's Compilation*, 96, by which the surrogates of the several counties, were authorized to issue probates of wills, letters of guardianship, and letters of administration; and were directed to record all wills proved before them, and all letters of guardianship, letters testamentary and letters of administration issued by them, and all *inventories* received by them respectively; and at the end of every three months, to transmit to the register of the prerogative office, all wills proved before them, and all *inventories* received by them during the quarter, to be filed *by the said register*, in his office. The 12th section of this act, repeals every act, and *parts of acts*, within the purview of it, and contrary thereto. This statute introduced a new rule of proceeding in relation, among other matters, to the filing of inventories, and repealed so much of the pre-existing acts as required executors and administrators to exhibit their inventories in the registry of the prerogative office. The foregoing provisions of the last mentioned law, were re-enacted by the act of 13th June, 1820, *Rev. Laws*, 776; but the act of 1795, *Rev. Laws*, 174, requiring surrogates to take administration bonds, remains in full force.

It is an established rule of construction, that all acts in *pari materia*, are to be taken together, as if they were one law. *The Earle, &c.* v. *Pattison, Doug.* 30. They are to be taken together, and compared in the construction of them, because they are considered as having one object in view, and as acting upon one system. 1 *Kent's Com.* 433. It is also a rule, that acts of parliament, ought to be expounded according to the intent and meaning of the legislature, which is to be collected, sometimes by considering the cause and necessity of making the act, sometimes by comparing one part of the act with another, and sometimes by foreign circumstances; so that the courts have ever been guided by the intent of the legislature, which they have always taken according to the necessity of the matter, and

according to that which is consonant to reason and good discretion 1 *Plowd.* 105-6.

If we test the legality of this bond by these rules, they will certainly conduct us to the conclusion that it is a lawful and valid bond. The plain and manifest intention of the legislature, was, to protect the rights of creditors and next of kin, by requiring the administrator to enter into bond with security, for the performance of the several duties required of him by law. Among other things, it was the duty of an administrator, when the act of 1795 was passed, to exhibit an inventory in the registry of the prerogative office; and therefore, that he should do so, was a part of the condition of his bond. Since that period, the convenience of the public, and the wisdom of the legislature, have required that the inventory should be exhibited to, and proved before the surrogate of the county; but the same reason that demanded security from the administrator, that he would exhibit an inventory into the registry of the prerogative office, under the act of 1795, now requires security, that he will deliver an inventory to the surrogate. To conform the condition of the bond, therefore, to the modified requirements of the law, is but to carry into effect, the reasonable intention of the legislature, and preserve the harmony of the system.

It is not necessary, however, to resort to these rules of construction. The condition of the bond is, subsequently, according to the "manner and form" prescribed by the act. It does not require the administrator to do any act, which, by law, he is not bound to do; but on the contrary, it binds him to the performance of the very thing which the law requires him to do. This is not like the case of bonds under the 23 *H.* 6. *c.* 9, which not only expresses the condition of such bonds, but declares that if taken in any other form, by color of office, they shall be void. The nature and design of the security, is also totally different. Bail bonds are intended for the ease and benefit of the obligor; and the prohibition to take a bond with any other condition, is for his protection; whereas administration bonds are for the benefit of creditors, and next of kin, and to compel the administrator to perform the trust reposed in him, and discharge the duties incumbent upon him. But even in the case

of bail bonds, a strict compliance with the letter of the law, has not been required.    Our statute, *Rev. Laws*, 404, like 12 *Geo.* 1, *c.* 29, directs the sum sworn to, to be endorsed on the writ, and then adds, "*for which sum*" the sheriff shall take bail, "*and for no more.*"    Yet, as well in England, as in our own courts, this statute is held to be only *directory* to the sheriff; and bonds taken in double and more than double the sum sworn to, have been held valid. *Norden* v. *Horsely*, 2 *Wils.* 69 ; *Whiskard* v. *Wilder*, 1 *Burr. Rep.* 330 ; *Ellis* v. *Robinson*, 2 *Penn. Rep.* 707 ; *Howard* v. *Blackford*, 2 *Penn. Rep.* 777 ; *Day* v. *Hall*, 7 *Halst. Rep.* 204.

The case of *Woolwick* v. *Forrest & al.* 1 *Penn. Rep.* 115, was on a constable's bond, with condition that he should *lawfully execute and discharge all the duties enjoined* upon him *as constable, agreeable to law :* whereas, the statute directs, that the condition shall be *for the true and faithful performance of all the duties enjoined upon him, by that act ;* yet a majority of the court held it to be a valid bond.

So in the case of the *Township of Middletown* v. *M'Cormick & al.*, 2 *Penn. Rep.* 500, the condition was still more extensive, beyond the requirements of the act, and among other things, that the constable should act according "to the best of his judgment and abilities;" yet a majority of the court held the bond to be a valid bond.    It is true, from this decision, Mr. Justice Pennington dissented, and in my opinion, not without good reason ; for besides the absurdity of making an officer give bond, that he will act according to the best of his judgment and ability, it contained stipulations, on failure of which, the bond would be forfeited, and yet no person be entitled to the penalty or damages.

But admitting that so much of the condition as requires the administrator to exhibit an inventory in the surrogate's office, is bad, it does not follow that the whole bond is void.    In the case of the *Township of Nottingham* v. *Giles, & al.*, 1 *Penn. Rep.* 120, Justice Pennington said, a bond may be good in part and bad in part, and the court will support the good, and reject the bad part.    It must, however, be a case in which the court can separate the good from the bad, as where there are several independent conditions, one, or some of which are in

conformity to the statute, and others not; in such case, the good may be supported and the bad rejected. And, it makes no difference, he says, in this respect, whether the bond is taken under a statute, or at common law, unless the statute, like that of 23 *H.* 6, contains a prohibitory or nullifying clause. This doctrine was sustained in the case of *Armstrong & al.* v. *The United States,* 1 *Peters C. C. R.* 46. The act of Congress requires collectors, &c. to give bond with sureties, *for the true and faithful execution of their respective offices and settlement of their accounts.* The bond taken, was not only prospective, but retrospective : viz.—that the collector *had* faithfully executed, and thereafter *would* faithfully execute, &c. Mr. Justice Washington, said, " when a statutory bond is taken, it ought to conform, *in substance at least,* to the requisitions of the statute ; and if it go beyond the law, it is void, at least so far as it does exceed those requisitions. It is sufficient then, for the settlement of this demurrer, without deciding that, that part of the condition, which requires the inventory to be filed in the surrogate's office, is bad, to say that there are other distinct and independent conditions which are good, and therefore, the bond must be supported.

It was contended by the counsel for the plaintiff, that the defendants, after craving oyer and setting out the bond and condition, should have pleaded the statute, instead of demurring to the declaration. If the statute under which the bond was taken, had been a private act, the objection would have been well taken. But the act of 1820, concerning executors, &c. *Rev. Laws* 174, is a public law, if there is one in our statute book. It is sufficient, if it appears on the record that the bond was an official one, taken under a public statute. *Samuel* v. *Evans,* 2 *T. R.* 569 ; *Dives* v. *Manningham,* 1 *Plowd.* 65. And if the defendant craves oyer, and sets out the deed, it becomes a part of the declaration. 2 *Saund.* 367 *n.* 3.

The demurrer, however, must be overruled for the reasons before given.

FORD, J. The plaintiff declares in debt on the penalty of an administration bond, given by the defendants' testator to the or-

The Ordinary *v.* Executors of Allen Smith.

dinary, since June 13th, 1820. The defendants pray oyer of the bond and condition, and then demur to the declaration, as being on a bond that is entirely void; because it is not made in the form prescribed by statute. *Rev. Laws*, 174. The statute referred to, passed the 2d of March, 1795, directs that the surrogate shall take the administration bond, " with condition in form and manner following, to wit: " one passage in which form is, that the administrator shall exhibit an inventory "into the registry of the *prerogative* court in the secretary's office of this state ; " whereas the condition of the present bond is, that he shall exhibit it "into the *surrogate's* office of the county of Salem." Another part of the prescribed form is, that if a will shall be exhibited "into the said prerogative court; " whereas the words of this bond are, if a will shall be exhibited "into the said surrogate's office." The form prescribed by law is thus changed in two instances, and consists in substituting the *surrogate's office* instead of the *prerogative court*. For these variances from the prescribed form, the bond is argued to be void, on the same grounds that *bail bonds* are adjudged to be void, if taken in any other form than that prescribed by statute. But the argument drawn from its likeness to a bail bond, is built on an entire mistake; for the statute does not prescribe *any form whatever* for a bail bond ; but only declares what it shall be *in substance ;* therefore the *form* is altogether immaterial, if the bail bond only be substantially according to the statute. There is also another feature in which they are very materially unlike to each other. The statute directs that the sheriff shall discharge a person arrested on civil process, upon reasonable sureties of such person to appear at the day and place mentioned in the writ ; it then adds a *negative clause*, that no sheriff shall take a bail bond with any other condition. Now this statute does indeed give a *form* for the condition of an administration bond ; but does not say that the surrogate shall take the condition *in no other form.* There is a *prohibition* in one statute, and *none* in the other; which prohibition prevents adjudications on bail bonds from being applicable to other cases. But considering this in the light of a voluntary bond, on what ground could it possibly be declared void, when it is *not prohibited* by statute.

But the objection to the bond for variance, admits of another very decisive answer ; that the form of condition prescribed in the act of 1795, was *repealed* by a subsequent act in 1820, *Rev. Laws*, 776, *sec.* 22, so far as these variances are concerned. In 1795, the law required *wills* and *inventories* to be exhibited in the *prerogative* office, and the condition of the bond was prescribed, to correspond with the law ; but in 1820, the law for exhibiting those documents *there*, was repealed; and they were directed to be exhibited in the surrogate's office, whereby so much of the old condition became *virtually* repealed. It became so by necessary and unavoidable implication ; for the Ordinary could not take bonds any longer in the old form without violating the new act; and if he could not depart from it without violating the old act, he could not have taken a legal bond either way. The construction set up by the defendants would nullify both statutes, and therefore cannot possibly be adopted. The obligation is valid, and judgment must be rendered for the plaintiff.

RYERSON J. concurred.

Demurrer overruled.

CITED in *Halsted* v. *Fowler et al.*, 2 *Zab.* 51.